1

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------x
                                       19-CR-402(NGG)
UNITED STATES OF AMERICA,
                                       United States Courthouse
          Plaintiff,                   Brooklyn, New York

          -against-                    January 19, 2022
                                       2:00 p.m.
RUSLAN ASAINOV,

          Defendant.

------------------------------x

     TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
          BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
             UNITED STATES SENIOR DISTRICT JUDGE

APPEARANCES

For the Government:        UNITED STATES ATTORNEY'S OFFICE
                           Eastern District of New York
                           271 Cadman Plaza East
                           Brooklyn, New York 11201
                           BY:  SARITHA KOMATIREDDY, ESQ.
                                MATTHEW HAGGANS, ESQ.
                                JOSHUA G. HAFETZ, ESQ.
                           Assistant United States Attorneys


For the Defendant:         SUSAN GAIL KELLMAN, ESQ.
                           25 Eighth Avenue
                           Brooklyn, New York 11217
                                - and -
                           LAW OFFICES OF SABRINA P. SHROFF
                           233 Broadway
                           New York, New York 10007
                           BY:  SABRINA P. SHROFF, ESQ.


Court Reporter:            LINDA D. DANELCZYK, RPR, CSR, CCR
                           Phone:   718-613-2330
                           Fax:     718-804-2712
                           Email:   LindaDan226@gmail.com


Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.
```

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

1                (In open court.)

2                (All rise.)

3                THE LAW CLERK:  This is a criminal cause for a
4    status conference.

5                Counsel, can you state your appearances, beginning
6    with the government.

7                MS. KOMATIREDDY:  Good afternoon, Your Honor.
8    Saritha Komatireddy for the United States.  I'm joined by my
9    colleagues, AUSAs Matthew Haggans and Josh Hafetz.

10               MR. HAFETZ:  Good afternoon, Your Honor.

11               MS. KELLMAN:  Good afternoon, Your Honor.  Susan
12   Kellman.  And I'm joined by Sabrina Shroff at counsel table.

13               Our client is not present, Your Honor, but we
14   understand that is not his fault.

15               THE COURT:  Yes, I understand that there's some
16   COVID issue --

17               MS. KELLMAN:  Who knows.

18               THE COURT:  -- over at the MDC.  Allegedly.
19   Supposedly.

20               MS. KELLMAN:  Allegedly.  Supposedly.

21               THE COURT:  Everyone please be seated.

22               MS. KELLMAN:  Thank you, Judge.

23               THE COURT:  Is there anyone who isn't vaccinated
24   here?

25               All right, so when you're speaking, if you want to

1   take off your mask, that's fine.
2              Okay.  You waived his appearance for this procedural
3   meeting without what the next steps are here?
4              MS. KELLMAN:  Yes, Your Honor.
5              THE COURT:  Okay.  We haven't met in a while.  What
6   is the -- and you will advise your client of the results of
7   this meeting?
8              MS. KELLMAN:  Of course, Your Honor.
9              THE COURT:  And if he wants another meeting to
10  discuss the same thing, we'll have another meeting.
11             MS. KELLMAN:  Of course.
12             THE COURT:  All right?
13             Ms. Komatireddy?
14             MS. KOMATIREDDY:  Yes, Your Honor.
15             THE COURT:  What's the status of this case?
16             MS. KOMATIREDDY:  Your Honor, the Court at the last
17  status conference set a motion schedule in which January 14th
18  was the deadline for pretrial motions.
19             The government filed a motion for an anonymous jury.
20  We also have a pending CIPA 4 motion for a protective order
21  that is pending the Court's decision.
22             That's the current status of the case.
23             THE COURT:  All right.  There haven't been any
24  motions made, what is the position of the defense at this
25  point, motion practice?

1     MS. KELLMAN:  Your Honor, one of the problems that
2  we're having is our ability to communicate with our client.
3  And I think a fair part of that is not his fault.
4     THE COURT:  You don't have to explain.  This is a
5  universal truth of --
6     MS. KELLMAN:  Of the MDC.
7     THE COURT:  -- of accessing clients who are in
8  custody at the MDC.
9     And I understand it completely.  It's very
10 difficult.  I have attorneys who just can't see their clients
11 and can't show them discovery, and they can't see discovery
12 because they only get, you know, half an hour out of their
13 cell three times a week, and that's just basically enough to
14 go take a shower.
15    So do I understand?  Yes.
16    MS. KELLMAN:  Yes.  And if they're in SAM's custody
17 and the SHU, which I don't even know how you do the two of
18 those together, but apparently that's where he is, it's been
19 impossible to even get a phone call.  Every call gets canceled
20 or we can't schedule it.
21    I'm told by Ms. Shroff, who tried to schedule a call
22 with him just recently, that the SHU calls are blocked for the
23 next several weeks.  So we can't even schedule a call if we
24 want to get a call.
25    And that leads us to the issue that we're having

1   about getting ready for trial.  We have a number of
2   investigative ideas that we've been pursuing.  But we can't do
3   them without input from our client.  And I don't see how we
4   can get them done in time for the Court's trial schedule
5   without having at least an opportunity to talk to our client
6   and find out whether or not he can be helpful on the issues
7   that we hope to be able to pursue.
8              THE COURT:  When's the last time you had an
9   opportunity to speak with your client?  Ms. Shroff?
10             MS. SHROFF:  Your Honor, I think we spoke to him the
11  last time before the move from MCC to MDC, which was, I
12  think...
13             MS. KELLMAN:  In the late fall, I think.
14             MS. SHROFF:  Yes.  So the problem really is, and I
15  speak only because I have another client in the same
16  predicament at the same -- in terms of the move --
17             THE COURT:  Yes.
18             MS. SHROFF:  -- and also in terms of the makeshift
19  way that MDC's, or doing their best, to set up the library in
20  the SAM SHU, which took a while to get off the ground.  And I
21  think the last time we spoke to him was quite a while back.
22  But I have to say I don't think that's any fault of our
23  client.
24             While I'm standing up, Your Honor, I just wanted to
25  take a minute to remind the Court that, as it was already

1  mentioned, the government did file its motion for a CIPA
2  protective order.  The last time we were here, we asked for a
3  reason on that, but the Court had asked us to hold off on that
4  particular motion filing.
5              I think Ms. Kellman would join in our application
6  that we would like an opportunity to brief that.
7              THE COURT:  Well, let's do it.
8              MS. SHROFF:  And I think we would have to ask for an
9  extension of the motion schedule in light of the fact that he
10 had this ongoing difficulty.
11             THE COURT:  Well, there's an application from the
12 government, right?  So you would like to brief the
13 appropriateness of that?
14             MS. SHROFF:  Yes, Your Honor.
15             THE COURT:  How much time do you need to brief it?
16             And do you need access to your client to do that, or
17 you can just do it?
18             MS. SHROFF:  We do not -- for that particular CIPA
19 response, we do not need access to the client.
20             But if you would give me two or maybe three weeks
21 for that?
22             THE COURT:  How about Friday, February 4th?
23             MS. SHROFF:  That's fine.
24             THE COURT:  And a response, if any?
25             MS. KOMATIREDDY:  Your Honor, we would like an

1    opportunity to respond.  If we could have two weeks.
2               THE COURT:  The 18th of February.
3               MS. KOMATIREDDY:  I apologize, Mr. Haggans has
4    reminded me of a case conflict.
5               If we could have three weeks, February 25th.
6               THE COURT:  Well, if I'm giving the government three
7    weeks for a reply, I'm giving you three weeks for your
8    application.
9               MS. KELLMAN:  Thank you, Judge.
10              THE COURT:  Let's make it February 11th for the
11   application, and March 4th for the response.  Okay?  That will
12   cover the briefing on that.
13              Which means, all of this means that the trial in
14   this case is somewhat far in the future.  I was hoping to do
15   it in March, and now you come in here and I can't -- I can't
16   even afford you an opportunity to meet with your client,
17   unless we hold another meeting and I have him produced, and
18   then you get to chat with him, you know, to fill him in on
19   where things are down in the pen.
20              MS. KELLMAN:  If they produce him.
21              I just had Judge Bianco do this to me recently,
22   because we couldn't get to see our client.  And so we put a
23   status conference on the calendar, which I'm sure there was
24   business, I don't mean to misrepresent, but they didn't
25   produce the client.

1  So we went out to the Central Islip and there was no
2  defendant. But I think that's a fairer -- I mean, it's an
3  idea.
4  THE COURT: It's a pleasant ride to Central Islip.
5  MS. KELLMAN: Yes. Very pleasant.
6  And then you have to come back to Brooklyn where you
7  can't find a spot.
8  I actually took the train. And I don't know if
9  you've ever had the pleasure of taking the train, which is
10  lovely, but when you get there, there's usually four to six
11  men waiting there to take you to the courthouse, where they
12  have no teeth. And I know that because they have no masks.
13  I'd love for them to go to the front end of the car
14  (indiscernible) go to the back end.
15  THE COURT: You can put that in your memoirs.
16  MS. KELLMAN: You mean my sitcom.
17  THE COURT: Well, I mean the question is, I need to
18  have the defendant with his lawyers in the courtroom so that I
19  can figure out what we need to do between now and the trial
20  and to establish a proposed trial date. And I can't do it
21  without the defendant being present, and without him
22  consulting with his attorneys, and so I'm going to set another
23  status conference --
24  MS. KELLMAN: It makes sense.
25  THE COURT: -- in this case so that we can actually

1    get off the mark, so to speak.
2               Because we're now talking about a trial some time in
3    the fall, the way I see it.
4               MS. KELLMAN:  But not October.
5               THE COURT:  But not October.
6               MS. KELLMAN:  Okay.
7               THE COURT:  Okay.
8               MS. KELLMAN:  Thank you.
9               Judge, I have another trial scheduled for the
10   beginning of October, or the middle of the October, in front
11   of Judge -- oh, God, it's in this district.
12              THE COURT:  In this district?  You can't remember
13   the judges in this district?
14              MS. KELLMAN:  I'm a little overwhelmed today.  It's
15   been one of those days.  Judge Kuntz.
16              THE COURT:  We're not -- this is well into the
17   future, unfortunately, because if you can't be prepared to go
18   to trial, I'm not going to have you go to trial.  And
19   hopefully the circumstances at the MDC and in the -- in
20   general, will be better in the near future.
21              MS. KELLMAN:  I would say they can't get worse.
22              THE COURT:  I'm not going to set a trial date until
23   you've had a chance for you to talk to your client or the
24   Court to figure out what we're doing in the fall, after
25   October.

1      MS. KELLMAN:  Thank you, Judge.

2      THE COURT:  You understand, of course, that the way

3  our trials are scheduled, we get -- there's a primary case

4  going to trial and then there's a backup case and -- there's a

5  primary and backup for both civil and criminal on Mondays and

6  Wednesdays.

7      But there's no way to know whether the main case is

8  going to go or whether the backup case is going to go, and

9  then there's a big hole in the trial schedule where they need

10 a primary or a secondary, because they've already pleaded out

11 or some other circumstance.

12     For instance, next Monday, I have a civil trial

13 where the -- one of the attorney's spouse tested positive

14 today and therefore we're not having a trial.

15     This is -- we understood that something like this

16 was a possibility, but we were hoping that we would at least

17 get a brief trial in, and we can't.

18     MS. KELLMAN:  Yes, I --

19     THE COURT:  So we're juggling all these different

20 situations, and I appreciate your consideration.

21     So why don't we set a -- schedule a status

22 conference for next week, late next week.

23     Is everyone available?

24     MS. KOMATIREDDY:  Your Honor, we would suggest

25 Thursday, the 27th, if that works for the defense.

1            THE COURT:  At what time?

2            MS. KOMATIREDDY:  2 p.m., Your Honor?

3            MS. KELLMAN:  That's fine.  I have up until 12:30.

4            THE COURT:  2 p.m., on Thursday, January 27th, for a
5    status conference.

6            Is there an application from the government?

7            MS. KOMATIREDDY:  Yes, Your Honor.  In light of the
8    pending motions, and the defense's continued efforts to
9    contact their client and prepare for trial, we ask that time
10   be excluded in the interest of justice between today and
11   January 27th.

12           THE COURT:  All right.

13           Does the defense consent?

14           MS. KELLMAN:  Yes, Your Honor.

15           THE COURT:  Time is excluded between today and
16   January 27th, 2022, in the interest of justice, in view of
17   ongoing motion practice, and the need for the defense to
18   consult with the defendant.

19           And all I ask is that on the 27th, if you're
20   planning anything after that during the day, check with us
21   first, because I still have to check that I'm actually
22   available at 2.  I definitely want to have the defendant
23   produced on the 27th.

24           MS. KELLMAN:  I won't schedule anything for the
25   afternoon.

1    THE COURT:  Let's make it 3, please.
2    MS. KOMATIREDDY:  Yes, Your Honor.
3    THE COURT:  Okay.  Thank you, everybody.
4        Anything else from the government for today?
5    MS. KOMATIREDDY:  Your Honor, counsel raised the
6  prospect of an extension of the motion schedule on account of
7  their difficulty communicating with their client.
8        Would you like to take that up at the next status
9  conference?
10   THE COURT:  Yes.  Hopefully we will be in a better
11 position.
12       And what I will ask, assuming that the defendant is
13 produced, that I will ask that the marshals make the defendant
14 available in the pens downstairs after the status conference,
15 and perhaps before.
16   MS. KELLMAN:  We'll see him hours.  We were here
17 this morning at 11 to spend the morning with him so that we
18 could -- and by the way, we called three or four times this
19 morning to confirm that he was here.  And after we confirmed
20 that he was here, we came here at 11 and...
21   THE COURT:  He wasn't here.
22   MS. KELLMAN:  He wasn't here.
23       And it was their mistake, they say.
24   MS. KOMATIREDDY:  Your Honor, it may be helpful to
25 have an order from the Court that the defendant be produced in

1    person on the January 27th.

2             THE COURT:  Submit an order, please.

3             MS. KOMATIREDDY:  Yes, Your Honor.

4             THE COURT:  Okay.

5             MS. KELLMAN:  Your Honor, I have a sense that, you

6    know, an order from the Court will have the wrong -- leave the

7    client with the wrong impression, in terms of, he's agreeing

8    with us, and he's going to come to court when he has to and he

9    doesn't have to be forced.

10            THE COURT:  All right.  I have the picture.

11            We'll try it without an order so that we don't

12   convey the impression that it's a forced order.  Because that

13   wasn't -- I'm sure that was not the basis for, or the

14   impetus --

15            MS. KELLMAN:  I understand that.

16            THE COURT:  -- for the request.

17            The request was to get the MDC to give him up for

18   the afternoon so that he can come here and be in court and

19   meet with you.

20            MS. KELLMAN:  Perhaps if the government were to

21   reach out to the counsel to the MDC.

22            If I talk to them, despite the (indiscernible) on

23   the table, but it may be they have greater force than I do.

24            THE COURT:  I'll leave that to the government to

25   figure out the best way to encourage --

1         MS. KELLMAN:  Encourage.

2         THE COURT:  -- encourage everyone.  All right?

3         Okay, thanks everybody.

4         MS. KELLMAN:  Thank you, Judge.

5         THE COURT:  Have a nice day.  Be safe.

6

7         (Whereupon, the matter was concluded.)

8

9                *    *    *    *    *

10

11

12  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

13

14  s/ Linda D. Danelczyk                    January 27, 2022

15    LINDA D. DANELCZYK                            DATE