**LAW OFFICES OF SUSAN G. KELLMAN**
25 EIGHTH AVENUE • BROOKLYN, NEW YORK 11217
(718) 783-8200 • FAX (718) 783-8226 • SGK@KELLMANESQ.COM
FELLOW, AMERICAN COLLEGE OF TRIAL LAWYERS

January 8, 2023

By ECF
Hon. Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11202

<u>U.S. v. Ruslan Asainov,</u> 19 Cr. 402 (NGG)
(Reply in Further Support of Motion to Strike the Purported
Expert Testimony of Leonard Reloza and Zaccury Guaragno)

Dear Judge Garaufis:

The government's opposition to Mr. Ruslan Asainov's motion to strike the proffered expert testimony of Officer Leonard Reloza and Zaccury Guaragno is unpersuasive. The Court should strike their testimony for the many independent reasons stated in Mr. Asainov's moving papers [ECF Nos.101 and 104] and below.

**DISCUSSION**

I.  **The Court Should Strike The "Sniper" Testimony Because The Government Has Not Met The Requirements of Fed. R. Crim. P. 16, Fed. R. Ev. 702, and the *Daubert* line of Cases as to Either Purported Expert Witness**

Federal Rule of Criminal Procedure 16(a)(1)(G) was recently amended to emphasize that the government is not permitted to practice trial by expert ambush. *See* Notes of Advisory Committee on Rules—2022 Amendment (stating that Rule 16 was amended to "ensure that parties receive adequate information about the content of the witness's testimony and potential impeachment"). To that end, the government's expert witness disclosure "must contain," among other things, "a complete statement of all opinions that the government will elicit from the witness in its case-in-chief" and "the bases and reasons for them." Fed. R. Crim. P. 16(a)(1)(G)(iii). The proposed expert witness also "must approve and sign the disclosure." *Id.* 16(a)(1)(G)(v). If the witness intends to add to his opinion testimony, his disclosure must be supplemented to provide "a complete statement" and all "the bases and reasons" for his new opinion(s), and he must sign that supplement. *Id.* 16(a)(1)(G)(vi). To ensure fairness, the Court must ensure that such disclosures are made "sufficiently before trial to provide a fair opportunity for the defendant to meet the government's evidence." *Id.* 16(a)(1)(G)(ii). "If a party [here, the government] fails to comply with this Rule, the [C]ourt may … prohibit the party from introducing the undisclosed evidence." *Id.* 16(d)(2)(D).

Mr. Asainov's trial begins on January 17, 2023, *just six business days from today's date*. Yet, the government has yet to comply with it Rule 16 obligations as to either of its two proposed "sniper" witnesses. Given this, defense counsel will not have a "fair opportunity … to meet the government's evidence" as to the proposed sniper-related testimony, and, accordingly, the Court should not permit the witnesses to testify as to those topics. *See* Fed. R. Crim. P. 16(a)(1)(G)(ii), 16(d)(2)(D).

The government contends that there is no prejudice here because "the record of this case belies the notion that sniper-related evidence could be a surprise, as the government has been alleging that the defendant was a sniper from the defendant's first appearance." Govt. Opp. [ECF No. 107] at 7; *accord id.* at 1. This argument is absurd. We are not discussing the government's allegations here, *but the evidence by which the government intends to prove its allegations*. If the government intends to support its allegations with expert testimony, it must timely provide all the disclosures required by Rule 16, so the defendant can have the time and ability to address that expert testimony. If the government fails to do so – like it has here – then it should bear the consequences of its failure, not the defendant. That is the meaning and purpose of Rule 16.

January 4, 2023 was the first time the government disclosed that it intended to have Officer Reloza testify regarding sniper training, roles, and tactics. *See* 1/4/23 Govt. Letter [ECF No. 103]. The government admitted as much in that filing. *See id.* at 1 (stating that the "government writes *to supplement* its prior expert disclosures concerning the anticipated testimony of Leonard P. Reloza" and "*[i]n addition to the topics previously identified*, the government expects to elicit from Officer Reloza his knowledge concerning snipers") (emphases added).

The sniper-related testimony truly is an entirely new and additional topic for Reloza. The government previously identified him solely as a "weapons expert" (12/2/2022 Govt. Letter at 2 [ECF No. 89]) and the report previously submitted by him was similarly limited to "the identification of various weapons and other items made in statements." Reloza Report at 10 (GX 3500-LR-6).[1] Reloza has never before been qualified as a "sniper expert," or testified to the sniper-related topics set forth in the government's January 4, 2023 filing. In *Kandic* and other cases, Reloza was qualified as a weapons expert and provided limited testimony regarding weaponry. *See, e.g.,* GX 3500-LR-5 (Reloza testimony in Kandic); GX 3500-LR-4 (Reloza testimony in Elmowsky).

There is no real question that the government has failed to meet its Rule 16 obligations as to Reloza.  All the government has provided defendant to date is a one sentence written summary of the seven general sniper-related topics on which Reloza hopes to testify. *See* 1/4/23 Govt. Letter [ECF No. 103] at 1. Patently, this one sentence is not "a complete statement" – it provides neither opinions, or the bases and reasons for same. It is impossible to know from this one sentence what Mr. Reloza intends to say about any of the general sniper topics on which he seeks to testify, how he arrived at that testimony, or what connection, if any, he contends exists between his U.S. Army experience as a "marksman" from 1999-2007, and Mr. Asainov's alleged experiences with ISIS as a "sniper" a decade later. Under Rule 16, the government has a duty to provide all this

---

[1] The material flaws preventing Reloza from testifying as a "weapons expert" in this case are discussed in Mr. Asainov's motion to strike [ECF No. 101] and in Point II below.

2

information in a timely, signed supplement. *See* Fed. R. Crim. P. 16(a)(1)(G)(vi). It has not done so. On this basis alone, the Court should deny the government's effort to belatedly expand Reloza's role and testimony at trial.

Further, Rule 16 requires that the expert witness disclosure include "the witness's qualifications" so the Court and the defense can ensure the witness actually is an expert on the specific topic on which the alleged expert seeks to testify. Fed. R. Crim. P. 16(a)(1)(G)(iii). In its opposition to the government last-minute effort to designate Reloza as a "sniper" expert, defense counsel explained that the Reloza CV did not support the government's contention that Reloza was qualified to testify as an expert on snipers because there is a marked and material difference between the training, roles, tactics, and experiences of a "marksman" like Reloza, and that of a sniper. See 1/5/2023 Def. Letter [ECF No. 104] at 3 (discussing differences). In its opposition, the government nowhere addresses the differences between being a marksman and a sniper, and Reloza's obvious lack of qualifications to testify as an expert on sniper-related matters. *See generally* Govt. Opp. [ECF No. 107]. Nor does the government supplement Reloza's CV to provide any sniper-related training and/or experiences that might qualify Reloza as a sniper expert. *Id.* For this reason too, Rule 16 has been breached, and Reloza may not testify as a sniper expert.

If anything, the government's violation of Rule 16 is even more stark when it comes to Agent Zaccury C. Guaragno. As previously explained to the Court by the defendant [ECF No. 104 at 4], the only information the government has provided as to Agent Guaragno is his CV. The government provides (i) none of Guaragno's opinions, (ii) none of the bases or reasons for those opinions; and (iii) no signature from Agent Guaragno. Thus, like with Reloza, it is impossible to know what Guaragno intends to say about any of the general topics listed, how he arrived at that testimony, or what connection, if any, he contends there exists between his U.S. Naval training and experience and the training and experience of an ISIS member, and why.

Clinching the matter, the government admits (albeit buried in footnote 4 on the last page of its opposition) that it has not yet met the requirements of Fed. R. Crim. P. 16 as to Guaragno. While the government states that it is now "working" to meet those requirements and will provide that required information "as soon as it is available," this is too little too late. Promising to honor the requirements of Fed. R. Crim. 16 sometime between January 8, 2023 and the start of trial on January 17, 2023 is not the "fair opportunity for the defendant to meet the government's evidence" that Rule 16 (a)(1)(G)(ii) requires. Defense counsel must otherwise prepare for trial, and defendant is not the one that should be prejudiced by the government's failure to follow the Federal Rules of Criminal Procedure. Rather, the government "alternative expert" first identified on January 4, 2023, and then only as to topic and name, should be stricken. *See* Fed. R. Crim. P. 16(d)(2)(D).

The government's abject failure to disclose the opinions and bases of any sniper-related testimony by Reloza or Guaragno also means that the government cannot meet its burden under Federal Rule of Evidence 702 (Testimony by Expert Witnesses) that its proposed sniper-related testimony is admissible.

The Court is charged with acting as a "gatekeeper" to ensure that the jury hears only expert testimony that "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *United States v. Shipp*, 422 F. Supp. 3d 762, 768 (E.D.N.Y. 2019) (Garaufis,

3

J.). In other words, the Court must ensure that expert's reasoning or methodology is both reliable and that it is "properly applied to the facts before the court." *Donnelly v. Ford Motor Co.*, 80 F. Supp. 2d 45, (E.D.N.Y. 1999).

In turn, the government has the burden of proving to the Court, by a preponderance of the evidence, that its proposed expert testimony meets each of these two requirements. *See Bourjaily v. United States*, 483 U.S. 171 (1987); *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007); FRE 702, Advisory Committee Notes (emphasizing that "the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence").

Here, the government has not told the Court (or defendant) what sniper-related opinions will be offered, or the methodology or reasons that form the bases of those opinions. The government has not even shown that Officer Reloza is qualified as an expert on sniper-related topics. Under these circumstances, no part of FRE 702 has been met. Specifically, the Court cannot properly find (a) that the proposed experts have the specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue; (b) whether their proposed testimony is based on sufficient facts or data; (c) whether their proposed testimony is the product of reliable principles and methods; *and* (d) whether the expert has reliably applied the principles and methods to the facts of the case. *See* FRE 702.

All the government offers the Court here is the expert's qualifications such as they are, and the bald statement that the opinions *that are not yet known or disclosed* will be "straightforward, replicable, and testable." Govt. Opp. [ECF No. 107] at 6. This is not enough. Indeed, in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311 (9th Cir. 1995), the Ninth Circuit rejected the assertion that presenting the Court with "with only the experts' qualifications, their conclusions, and their assurances of reliability" met Rule 702 and the *Daubert* standard. *Id.* at 139. Put another way, given the paucity of the government's disclosure, the government cannot properly show, nor may the Court properly determine, (i) what opinions will be offered by Reloza or Guaragno; (ii) how the witnesses arrived at those opinions; (iii) whether the witnesses are qualified to provide those opinions, and (iv) whether those opinions are relevant to, and appropriately advance, any fact material to the government's case.

For all these reasons, and the ones previously discussed at ECF Nos. 101 and 104, the Court should not permit either Reloza or Guaragno to testify about sniper-related topics.

**II.** **Officer Reloza's "Weapons" Testimony Remains Improper and Should Not Be Published to The Jury**

In its opposition, the government clarifies that it will not "elicit identification testimony from Officer Reloza" (Govt. Opp. at 4 n.1); will not "introduce[e] Officer Reloza's report into evidence" (*id.* at 4); will not offer through Officer Reloza the "photographs" he found on the Internet (*id.*). Presumably, the government also will not introduce the anonymously sourced commentary about ISIS that Officer Reloza found on the Internet and put into his report.[2]

---

[2] If the government intends to do so, Mr. Asainov continues his objection to same.

4

The government contends that it will only "elicit testimony about the nature and the capabilities of the weapons and equipment described by the defendant himself in his post-arrest statements" as well as the M-4 carbine depicted in GX 1B and 1C (provided that other witnesses identify defendant as the individual in those two photographs). Govt. Opp. at 4.

The problem here is that, as the government's opposition makes clear, the alleged descriptions of weapons and equipment made by Mr. Asainov are insufficient for Officer Reloza to reliably connect or match many of those description to any specific weapon. *See* Govt. Opp. at 2-3 (asserting that defendant mentioned such items as "grenades," an "RPG," "night vision technology" "Browning pistol," and "Glock pistols" in his statements).[3] Given these general descriptions, there is no way of knowing whether many of the weapons Reloza may seek to wave before the jury as part of his "show and tell" are the same weapons with the same capabilities as those purportedly alluded to by Mr. Asainov. Indeed, this is why Officer Reloza desperately tried to find pictures on the Internet of the type of weapons being carried by other purported terrorists. It would be akin to Mr. Asainov stating that he drove a "Toyota truck" in Syria and Officer Reloza using that descriptor as the basis for driving a white Toyota Tundra into the courtroom – irrespective of the existence of the Toyota Tacoma or the various Tundra models available worldwide – because he also found a picture on the Internet of an alleged ISIS fighter driving a white Toyota Tundra.

Officer Reloza concedes, via the substance of his report, he is unable to identify many of the weapon he seeks to publish to the jury with sufficient certainty and reliability. In this regard,

- because the only descriptor purportedly provided by Mr. Asainov is "Kalashnikov rifle," Reloza has no choice but to identify various "AK-47 type machineguns," including the Russian AK47 machinegun, the Chinese Type 56 (AKM) machine gun, and the Polish Kbk (AKS) machinegun, each with distinct features. Reloza Report at 4, 21-23. There is no way of knowing of these disparate models is the correct AK-47.

- because the only descriptor purportedly provided by Mr. Asainov is "M-16 rifle," Reloza has no choice but to identify the entire "M16 family of weapons" rather than a specific weapon. Each of these weapons look different and have distinct features and abilities. Reloza Report at 4, 14-17. There is no way of knowing of these disparate models is the correct M16. The same problem holds true for the M-4 family of weapons identified in the Reloza Report. *Id.* at 4, 18-20.

- likewise, when it comes to "Thermal Scope" or "Grenades," Reloza merely guesses because there are so many makes or types. For thermal scopes, he chooses to identify certain thermal scopes used or favored by the U.S. military, like the Fortuna and Pulsar thermal optic, without knowing if they are anything like the one supposed referenced in the statement. *See* Reloza Report at 6-7, 57-61. For

---

[3] Only a few descriptors appear sufficiently specific for Officer Reloza to reliably match a weapon to the description – *i.e.*, "Nightforce Mil-Dot scope" and "Kestrel 2000 wind meter." Even as to those, it depends on what Mr. Asainov said in his statements, in what context, and whether those statements are admitted at trial.

5

grenades, Reloza concedes that there are multiple disparate types of grenades – *e.g.*, fragmentation, chemical, practice, and flash-bang – and provides pictures of various grenades used by the U.S. military. He cannot, however, testify as to what specific "grenade" or "grenades" Mr. Asainov was referring to in his statement, and thus cannot reliably publish that grenade to the jury. *Id.* at 7, 62-65.

The same problems hold true regarding the Glock and Browning pistols referred to in Reloza's Report. In his report, Reloza focuses on the FN/Browning P35 "Hi-Power" Pistol and the Glock 19 Pistol because he was expressly instructed to do so by the United States Attorney's Office. *See* Reloza Report at 3. In its opposition, however, the government avers that Mr. Asainov only stated "Browning pistol" and "Glock pistol." Govt. Opp. at 2-3. This change is material because there is a wide assortment of different Browning and Glock models manufactured and available worldwide. *Compare* the many different types of Browning and Glock pistols found at https://www.browning.com/products/firearms/pistols.html and https://us.glock.com/en/pistols. Without the apparent embellishment provided by the United States Attorney's Office to Officer Reloza there is no way of knowing what Glock or Browning was purportedly carried by Mr. Asainov, and any specific make(s) or model(s) of those pistols brought to the courtroom would constitute unreliable, misleading, and likely false evidence.

For these reasons and those set forth in his moving papers, Mr. Asainov specifically renews his objection to the introduction of any weapon to the jury through Officer Reloza. At most, Officer Reloza should be permitted to testify about the M4 Carbine shown in the GX 1 and 2 (and only if the armed individual in those two photographs is properly identified as Mr. Asainov).

## **CONCLUSION**

For the reasons stated here and previously, the Court should prevent or seriously limit the testimony of Officer Reloza and entirely preclude the testimony of Agent Guaragno.

Respectfully submitted,

*Susan G. Kellman*
Susan G. Kellman
Sabrina P. Shroff
*Attorneys for Ruslan Asainov*

cc: All counsel of record (by ECF)