UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

--------------------------------x

                                              19-CR-402(NGG)
UNITED STATES OF AMERICA,

                                              United States Courthouse
          Plaintiff,                          Brooklyn, New York

          -against-                           October 17, 2023
                                              2:30 p.m.
RUSLAN MARATOVICH ASAINOV,

          Defendant.
--------------------------------x

          TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
           BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
              UNITED STATES SENIOR DISTRICT JUDGE


APPEARANCES

For the Government:        UNITED STATES ATTORNEY'S OFFICE
                           Eastern District of New York
                           271 Cadman Plaza East
                           Brooklyn, New York 11201
                           BY:  DOUGLAS M. PRAVDA, AUSA
                                J. MATTHEW HAGGANS, AUSA
                                NICHOLAS J. MOSCOW, AUSA
                                NINA C. GUPTA, AUSA

For the Defendant:         SUSAN G. KELLMAN, ESQ.
                           25 8th Avenue
                           Brooklyn, New York 11217

                           SABRINA P. SHROFF, ESQ.
                           80 Broad Street
                           New York, New York 20004

Court Reporter:            Georgette K. Betts, RPR, FCRR, CCR
                           Phone:   (718)804-2777
                           Fax:     (718)804-2795
                           Email:  Georgetteb25@gmail.com


Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.

PROCEEDINGS

(In open court.)

THE COURTROOM DEPUTY:  Criminal cause for sentencing.  Beginning with the government, please state your appearances.

MR. HAGGANS:  Good afternoon, your Honor.  From the U.S. Attorney's Office, AUSA Matthew Haggans joined by AUSAs Douglas Pravda, Nick Moscow, and Nina Gupta.  We also have paralegal specialists, Wayne Colon and Mary Clare McMahon.  From probation, Probation Officer Jennifer Baumann.  And from the JTTF, NYPD Detective Kevin Martin and Special Agent, FBI Special Agent Marc Fenichel.  Good afternoon, your Honor.

THE COURT:  Good afternoon, please be seated.

MS. KELLMAN:  Good afternoon, your Honor.  Susan Kellman and I am assisted at counsel table by Sabrina Shroff.  Our client, Mr. Asainov, is present in the courtroom.  Good afternoon, Judge.

THE COURT:  Good afternoon.  Good afternoon, Mr. Asainov.

MS. SHROFF:  Good afternoon, your Honor.

THE COURT:  Good afternoon.

This is a sentencing for Ruslan Maratovich Asainov.  Mr. Asainov, are you satisfied with the assistance that your attorneys have given you during this proceeding?

MS. KELLMAN:  I believe that he is, your Honor.  He's opted to speak through counsel.

3

PROCEEDINGS

THE COURT:  And that's fine.

MS. KELLMAN:  Yes.  I believe he is content with the services he's received so far.

THE COURT:  All right, that's fine.

The defendant was found guilty at a jury trial of five counts:

Count One, conspiracy to provide material support to a foreign terrorist organization.

Count Two, providing and attempting to provide material support to a foreign terrorist organization.

Count Three, provision and attempted provision of material support to a foreign terrorist organization.

Count Four, receipt of military-type training from a foreign terrorist organization and;

Count Five, obstruction of justice.

I've reviewed the following materials in the sentencing file and I'm just going to go over them with you. I have a presentence report provided by the Probation Department that was filed on July 20th, 2023.  There is an addendum to the presentence report in response to a submission by the government on August 16th, 2023 and the addendum was filed yesterday.  Thank you.

I have the government's submission to the probation officer on August 16th, 2023.

Has the defense seen all of those documents?

GEORGETTE K. BETTS, RPR, FCRR, CCR
Official Court Reporter

PROCEEDINGS

MS. KELLMAN:  Yes, your Honor.

THE COURT:  Have you shared them with your client?

MS. KELLMAN:  Yes, your Honor.

THE COURT:  Thank you.  And then there is the government's sentencing memorandum which was filed on October 6th, 2023.

And same question for the defense, have you seen this document and shared it with your client?

MS. KELLMAN:  Counsel has seen it, your Honor.  Our client did not have any interest in seeing it.

THE COURT:  He did not have any interest --

MS. KELLMAN:  He has a copy of it, yes.

THE COURT:  Well, that's --

MS. KELLMAN:  He has a copy of it, yes, your Honor.

THE COURT:  All right.  He hasn't asked you any questions about it?

MS. KELLMAN:  No, he has not.

THE COURT:  He's had the opportunity to do so if he wished to?

MS. KELLMAN:  Yes, your Honor.

THE COURT:  Okay, that's fine.

Is there anything else that I'm missing, Mr. Haggans?

MR. HAGGANS:  I believe there is a Rule 29 motion that is still technically pending, your Honor.  Those are ECF

5

PROCEEDINGS

174, which is the defense's letter of March 23rd, and the government's response, ECF 175.

THE COURT:  Well, let's just -- do you have anything to add to the Rule 29 motion?

MS. KELLMAN:  No, your Honor.

THE COURT:  Nothing to argue?

MS. KELLMAN:  No, nothing beyond our letter.

THE COURT:  Okay.  And does the government have anything?

MR. HAGGANS:  Not beyond as was argued when the motion was made on the record at trial and we cite that portion in our letter.  It was trial transcript 2479 to 85.

THE COURT:  The Court denies the motion.

Okay.  That brings us to the computation of the guideline.

MS. KELLMAN:  Your Honor, if I may, just before we get to the guideline computation, I point this out because in the addendum that we received yesterday I noted that the addendum notes in paragraph 65 -- makes reference in paragraph 65, it says, Count Four is corrected, and I believe that reference is corrected in light of the government's letter of --

THE COURT:  You can sit down --

MS. KELLMAN:  -- August 16.

THE COURT:  -- and just talk into the microphone.

6
PROCEEDINGS

For some reason it's --

MS. KELLMAN:  It's not picking me up.

THE COURT:  No, it's not clear.  So, go ahead.

MS. KELLMAN:  Okay.  So in paragraph 65 of -- in the addendum there is a reference to paragraph 65 which says, Count Four is corrected to note that the term of imprisonment for Count Four is 10 years in custody.  That's actually incorrect.  And that made me go back to the PSR --

THE COURT:  Meaning it is not 10 years.

MS. KELLMAN:  It is not 10 years.  In fact, the statute reads specifically -- and it's 2339(d) paragraph 4, it says that a foreign terrorist organization -- one who is found to be a foreign -- a member of a foreign terrorist organization, shall be fined under this title, fined under this title, or imprisoned for 10 years, or both.  So in terms of technically the sentence Count Four is corrected to note that the term of imprisonment is 10 years.  It's 10 years, or a fine, or both.

And then I went back to the original PSR and on page 3 with respect to Count Four it says, not more than 10 years, slash, $250,000.  It should say 10 years -- not more than 10 years, or fined $250,000, or both.

So that's the language of the statute.  So it seems to be incorrect on page 3 of the original PSR, it is incorrect in the government's letter to probation in which they are

7

PROCEEDINGS

pointing out the incorrectness, but they're pointing it out incorrectly, and then the addendum adopts the incorrect recitation of what the punishment is by saying it's a term of imprisonment of 10 years.  The statute does not say that, and I'd ask your Honor to just direct that it be corrected.

MR. HAGGANS:  I think the parties agree on this, your Honor, that as to Count Four, based on the way the statute is phrased, if the Court elects to impose a sentence, that sentence has to be 10 years and that's what the government endeavored to set out in its letter and apologizes for any mis --

THE COURT:  All right.  So let's make a correction to the PSR to indicate that the sentence -- that if an incarceratory sentence is to be imposed, it shall be 10 years --

MS. KELLMAN:  Or a fine.

THE COURT:  I'm not done.

MS. KELLMAN:  Oh, sorry.

THE COURT:  But there is an option for a fine.

MS. KELLMAN:  Thank you, Judge.  Or both.

THE COURT:  Or both.

MS. KELLMAN:  Yes.

THE COURT:  Okay.  Thank you very much for pointing that out and someone should point it out to the draftsperson of the --

PROCEEDINGS

MS. KELLMAN:  Of the statute.

THE COURT:  -- of the statute.  All right.

Is there anything else that you wish to bring to the attention of the Court regarding the PSR on behalf of the defense?

MS. KELLMAN:  No, nothing else, Judge.

THE COURT:  Anything else from the government on the PSR?  Anything that hasn't been already brought to the attention of probation by the government?

MR. HAGGANS:  No, your Honor.

THE COURT:  Okay.  And so as amended and as further amended now in court, I accept the PSR.

Now, the next step is to determine the guideline and if we look at the presentence report, the adjusted offense level on page 11 of the presentence report is a 61.  There is no 61.  It only goes as far as 43 on the guidance from the sentencing table.  However, as pointed out in the PSR, that where the total offense level is calculated in excess of 43, the offense level will be treated as a level 43.  So I will do so.

So the offense level is a 43 and the guideline -- well, irrespective of the Criminal History Category would be life.  And in so far as the instant offense involved in this case was intended to promote a federal crime of terrorism, per Sentencing Guideline Section 3A1.4(b) the Criminal History

PROCEEDINGS

Category is automatically a VI.  So having said all that, the total offense level is a 43, and the Criminal History Category is a VI and therefore the guideline based on terrorism is life.

Does the government agree?

MR. HAGGANS:  We do, your Honor.

THE COURT:  And technically, does the defense agree?

MS. KELLMAN:  Yes, your Honor.

THE COURT:  Okay.  Well, that brings us to the next step.  But before we go to the next step, I'm just going to ask, since there is nothing submitted by the defense, could you place on the record the reason you haven't made a submission in connection with the sentencing of the defendant?

MS. KELLMAN:  Of course, your Honor.  After discussions with our client that have spanned the entirety of our representation, it was clear to us that it was our client's desire to not have us put anything on the record.

THE COURT:  All right.  And I understand that your client agrees that that is his position.

MS. KELLMAN:  Yes, correct, your Honor.

THE COURT:  And you're speaking for your client.

MS. KELLMAN:  Yes, your Honor.

THE COURT:  All right, thank you.  All right.

The next step then is the Court has reviewed all the materials that it has identified in the record and I'm

PROCEEDINGS

prepared to sentence the defendant once I have heard from the government and anything from the defense and offer the defendant at the end an opportunity to speak if he wishes to do so in connection with sentencing.

So, Mr. Haggans, go ahead.

MR. HAGGANS:  Thank you, your Honor.  As we set out in our memo, the government seeks here the maximum available sentence, which is life imprisonment as to Count Three, and the available maximums as to the other four counts for an effective sentence of life followed by 70 years.

We are all here today because of the defendant's choices.  His choice in 2013 to abandon his home, his wife and his child.  His choice to seek bloody jihad, to take up arms for a terrorist organization.  His choice to volunteer for sniper training.  His choice to kill the enemies of ISIS and his choice to teach others to kill.  His choice to embrace killing as both means and end, to embrace and celebrate savage terroristic violence.  His choice to do whatever it took to spread the dark and twisted vision of ISIS to every corner of the globe.  His choice to ask, quote, day and night for the United States to be erased, quote, from the face of the earth. That's Exhibit 506A-T.

No one forced him to travel to Syria.  No one forced him to fight.  No one forced him to take his oath to join ISIS, to obey its self-appointed leader.  He was proud to take

PROCEEDINGS

that oath.  It brought him joy.  The Court saw it in the video in which he reminisces about that moment.  Exhibit 700A-T-R.

It brings him joy today as he told his mother, quote, you don't understand the sweetness of this, end quote, of fighting in ISIS's Holy War.  That's Exhibit 507A-T.

And he holds to that foul cause to this day.  He has held to it every time he has entered this courtroom by declaring his continued allegiance to ISIS.  By making this flag, Exhibit 501.  And we invite the Court to examine it, to see the time and care that the defendant put in to crafting it.  He holds to the ISIS cause by refusing to address your Honor, by refusing to stand for the members of the jury at trial.  As defense counsel noted in opening, at page 788 of the transcript, we all stand for the jury.  All of us, but him.  Because he makes his own choices.

The choices of others do not concern him.  Any choice made by any person with which he disagrees could be the basis for him to wish them dead.  And if he is ever released, he will act on that view.  He will use the tactics he learned from ISIS to seek violence.  In his words, quote, he will be fighting to the end.  Exhibit 507A-T.

If you don't want to worship his God in the manner he demands, you're an infidel worthy of a violent death.  If you don't want to follow his holiday choices, he's willing to kill and be killed to eliminate holidays.  If you don't want

PROCEEDINGS

to adopt his parenting choices, as he told his former spouse, chillingly, in ISIS's name, quote, I am going take her away from you, I will teach you a lesson.  Exhibit 32S.  He knew what ISIS was and that it was feared.  He inflicted that fear upon the mother of his child because she dared to disagree with his choices.

It was a running thread at trial from the defense that the defendant was, quote, very religious.  Transcript 790.  And that's why he did what he did.

Again, in closing the defense asked the jury not to hold, quote, against Mr. Asainov his very poor views on the Islamic State.  That's page 2649.  It's not a crime to have any particular view of ISIS and the defendant was not on trial because of his views on ISIS.  The jury did not convict the defendant because of his views about ISIS.  This case was not about the defendant's views, it was about the defendant's conduct.  It was about the defendant's efforts to remake the world in the image of ISIS, starting in Syria.  The Court's sentence will be the result of the defendant's conduct.

But that does not mean that the defendant's views of the world and of ISIS are not relevant.  They are a consistent, invariable presence in his life now, they motivate him.

While in Syria he put his views into action with deadly effect, and if he's released he will act in service of

13

PROCEEDINGS

ISIS once again.  There could be no doubt of that fact.

He was a capable killer.  He was a good shot.  A former Navy SEAL sniper, the elite of the elite testified that the defendant's shooting accuracy met the standards set for the Navy SEALs.  That's at page 2348.  And he trained others to shoot.  ISIS needed snipers for the battlefield and the defendant delivered them by the dozen.  And the same elite sniper testified that the defendant's training course covered the topics you'd cover in a sniper training course.  Page 2348.  The defendant was a good teacher.

How many died at the defendant's hands or at the hands of his trainees?  The defendant himself does not know, but it's clear beyond any doubt the defendant knows the answer is one or more.  And the defendant was not the only one to know that.

Know a man by the company he keeps, and the defendant's company was Mirsad Kandic.  He knew of the defendant's prowess and he boasted about Asainov to an aspiring ISIS sniper, quote, he's one of the best.  He is emir of Muascar, which is a training camp, for a long time for snipers, for a few years now.  He is a good brother.  Exhibit 1332B-D.  High praise for this defendant from a fellow member of ISIS and a well-connected one at that, as the Court will recall.

The defendant took his oath to ISIS in 2014.  He has

PROCEEDINGS

lived by that oath every day since.  He has shown by his words and deeds he will hold to that oath until his last day.

From the moment the defendant first appeared before your Honor, which is transcribed at Exhibit 500, he made clear to you he's a zealous member of ISIS.  He has wholeheartedly embraced its world view, he will spew it at anyone in earshot, his mother, your Honor, and other courthouse personnel.

He has no regrets.  As he told his mother to hear him tell it, he is not guilty of anything.  He was, quote, told to kill and fight with ISIS and he did so.  He has, quote, no guilt over killing.  Exhibit 508A-T.  No regrets, no remorse, no acceptance of responsibility.  No possibility of rehabilitation.  The sentencing factors therefore point in only one direction, the maximum possible sentence.

He embraced terroristic violence, it brought him joy, he trained others to do it.  He regrets nothing.  He will pursue terroristic violence if ever given the opportunity.

We're here because of the defendant's choices. Agree with his choices, agree with him, agree with ISIS, agree with terrorism and live.  Disagree and he will, quote, take everything from you.  Exhibit 633T.

The defendant chooses violence.  Do not give him the opportunity to inflict his choices on the world ever again. Thank you, your Honor.

THE COURT:  Ms. Kellman.

PROCEEDINGS

MS. KELLMAN:  Your Honor, briefly.  I would say that it's rare that I start my remarks at sentencing by saying that I agree with the government.  But the government is correct about one thing and, that is, that my client's actions were a function of his choices.  And when he spoke to his mother with the agent listening on the phone and he said that you don't understand the sweetness of the life I've chosen, that says it all.  This is who he is, this is what he believes fervently, and he recognizes that it hurts people around him, but it is a choice that he's made and a sweetness that he may understand that others don't.  That's it.

THE COURT:  Thank you.

Before I sentence the defendant is there anything that you would like to say to the Court before I sentence you, Mr. Asainov?

MS. SHROFF:  Your Honor, he doesn't wish to speak.  Thank you.

THE COURT:  I'm sorry?

MS. SHROFF:  He does not wish to speak, your Honor.  Thank you.

THE COURT:  Okay, thank you.

Well, it's ironic of all the choices that this defendant made, the one choice that Mr. Haggans did not mention is the choice that he made having been born in Kazakhstan to become a United States citizen and he was

PROCEEDINGS

naturalized as a United States citizen so at some point he saw the benefit to him of embracing this country, which has welcomed so many millions of people from elsewhere in the world, to enjoy the benefits of the United States, to grow, to have a family as he did, to marry, to have opportunities.  He accepted that.  He wanted that at some point and then something happened.  Everything went in the opposite direction.  It makes one wonder what a misplaced sense of religious zealotry will have on people who have benefited so greatly from their welcoming into this country.

It's hard for the Court to have any understanding or sympathy for what we have seen in this trial.  Between this trial and the trial of Mr. Kandic, who was this defendant's associate in ISIS, it was made very clear to the Court that there is a misplaced sense of what religion is for and how it works and how religion embraces love, not hate, not destruction, but there's something there in some people's minds and souls that sees it differently.  No matter what we do or say or how we try to help and make lives better, some people just go in the other direction, and in the case of Mr. Asainov in a direction that only brings misery and death to innocent people around the world, as we have seen so recently with Hamas.

Is the defendant ready to be sentenced?

MS. KELLMAN:  Yes, your Honor.

PROCEEDINGS

THE COURT:  I sentence you as follows:

On Count One, twenty years in the custody of the attorney general to run consecutively to all other sentences.

On Count Two, twenty years in the custody of the attorney general to run consecutively to all other sentences.

On Count Four, ten years in the custody of the attorney general to run consecutively to all other sentences.

Count Five, twenty years in the custody of the attorney general to run consecutively to all other sentences.

And with regard to Count Three, life in prison to run consecutively to all other sentences.  For a total of life in prison plus 70 years in the custody of the attorney general.

There is a 500-dollar special assessment, which is mandatory.

You have the right to appeal your sentence to the United States -- and your conviction to the United States Court of Appeals for the Second Circuit if you believe the Court has not properly followed the law in sentencing you. Your time for appeal is extremely limited.  You should discuss with your attorney at once whether -- attorneys at once whether an appeal would be worthwhile.

Ms. Kellman, in as much as your client doesn't speak to the Court, do you understand your client's right to appeal?

MS. KELLMAN:  Yes, of course, Judge.

18

PROCEEDINGS

THE COURT:  Will you share with him his right to appeal?

MS. KELLMAN:  Yes, of course, your Honor.

THE COURT:  And the limited time that he has to enter an appeal.

MS. KELLMAN:  We will do that.

THE COURT:  Anything else from the government?

MR. HAGGANS:  No, thank you, your Honor.

THE COURT:  We're adjourned.

(Matter concluded.)

*    *    *    *    *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


s/ Georgette K. Betts                    November 3, 2023

GEORGETTE K. BETTS                       DATE

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*